# SALES REPRESENTATIVE AGREEMENT

This agreement is entered into this day of 12/31 2014 by and between Active Marketing Group, Inc (the Sales Agency) and EB Sport Group and EB Brands, (the Company).

**Whereas,** Company is engaged in the business of manufacturing and distribution of its Products (as described on Schedule 2 attached hereto) (The Products) and wishes to have The Products offered for sale at specific retailers in the United States (the Territory), and

**Whereas,** The Sales Agency is engaged in the business of representing manufacturers and distributors as sales agent and is compensated for such service through commissions on sales arranged for the manufacturer and distributor, and

**Whereas,** Company desires to engage the Sales Agency and the Sales Agency desires to accept engagement by Company as Company's Sales Representative under the terms and conditions of this Agreement.

**Therefore,** for good consideration the parties see as follows:

1. ACCOUNTS.    The Accounts mean the accounts described as Walmart, Walmart.com, SAM's Club and Samsclub.com..
Whereas the Sales Agency is directly involved for the specific products assigned by the Company and sales for which he is directly involved. Accounts may be changed from time to time in writing and must be approved by both parties.

2. APPOINTMENT AS SALES REPRESENTATIVE. Company hereby appoints The Sales Agency as its sales representative to solicit orders for the Products in the Territory. The Sales Agency hereby accepts the appointment and agrees to solicit orders and promote the Products, subject to the terms and conditions of this Agreement.

3. TERM.    January 1, 2015 through December 31, 2016
Agreement shall become effective upon its execution by the parties. The agreement may be terminated by the Company, with or without cause, by giving the Sales Agency thirty (30) days written notice.

4. ORDERS:    Orders for the Products received by the Sales Agency shall be immediately forwarded to Company. Each order solicited by the Sales Agency is subject to acceptance by Company, and Company may reject any order, in whole or in part for any reason, including without limitation, lack of availability of inventory or supplies or limited capacity of Company, or creditworthiness of the customer.

5. WARRANTIES.    The Sales Agency shall not make any representations as to warranties to any customer or potential customer other than the warranty published by Company in its sales literature.

V3

EXHIBIT
A

6. SALESPERSON'S DUTIES. The Sales Agency agrees to:

(a) use its best effort to sell and promote the sale of the Products to the Accounts to develop a volume of business commensurate with the potential for sales of the Products in the Territory and to abide by Company's policies as communicated;

(b) assist the Company in contacting and soliciting prospective purchasers of the Products And participate in meetings and presentations with the Accounts;

(c) devote time for the purpose of soliciting or promoting the sale of the Products;

(d) maintain a sales office and dedicated support team with close proximity to the Accounts;

(e) monitor and report on the activity of the Accounts and competitive products at the Accounts in an effort to identify growth opportunities.

(f) assist the Company in the forecasting and replenishment process to ensure:
- targeted in-stock levels are achieved for the Accounts
- targeted inventory turns are achieved for the Company in Schedule (1)

(g) confer with Company sales management team before corresponding with buyer(s)

(h) provide weekly performance reports to Walmart buyers and EB team

(i) hire or assign a new sales manager, funded by the Sales Agency, to sell to and manage The Accounts, in order to maximize available business opportunities. This hire will be designated by the Sales Agency and will be an employee of the Sales Agency. They will report directly to the Sales Agency.

7. COMPANY'S DUTIES. Company agrees to:

(a) establish the price, charges, terms and conditions of the Products;

(b) furnish the Sales Agency with current price lists, terms, and freight charges and credit applications for customers;

(c) provide its customary literature concerning the Products to the Sales Agency or to customers as the Sales Agency may from time to time request.

(d) provide the necessary data to enable the Sales Agency to manage forecasting and replenishment for the Account and targeted inventory turns for the Company

V3

8. COMMISSIONS.

(a) Company shall pay to the Sales Agency a commission on the sales of the Products solicited by the Sales Agency to the Accounts. The commission rate for such sales is set forth in Schedule (2) and will be applied to Net Sales Price. Commission rates will be set by the Company at its sole discretion depending on achieved final pricing with the customer. Additions, deletions and modifications to Schedule 2 shall be instituted at any time at the sole discretion of the Company as business conditions require. The Net Sales Price shall mean the list price of the Product(s) sold less all returns, discounts, allowances, domestic freight charges, compliance charges and net air freight from factory. Net Air Freight defined as gross air freight costs less standard ocean freight costs. In a calendar year the net air freight costs deducted from gross sales will not exceed $200,000.
Commissions earned can be reduced at the discretion of the Company if the Sales Agency  fails to achieve the Account in-stock targets and the inventory turns of the Company.
Additional commissions on net sales can be earned by the Sales Agency for attaining new business and generating revenue growth for the Company at the Accounts and revenue levels as set forth in Schedule (2).

(b) the Sales Agency commission shall be earned upon the shipment, invoicing and payment of the invoice(s) for the Products sold the Accounts. The commission shall be payable on the Fifteenth (15th) day of each month following the payment of the invoice(s). Any exceptions to the above will be provided to the the Sales Agency in writing.

(c) In the event this agreement is terminated per paragraph #3
   1. Without cause, the Company will pay the Sales Agency commissions for a period of time based on mod set timing ( respective to timing for Sport Group or Travel mod sets ).
      a. For termination occurring between actual mod set and decision for next mod ( for example between the time of a September mod set and following February decision for the next mod set) the Sales Agency would receive full commissions on the sales occurring for the first three (3) months after the termination date and one half (1/2) commissions on sales for the subsequent three (3) months.
      b. For termination occurring after a mod set decision the Sales Agency would receive full commissions until the next mod set ( for example, termination on March 1 after a February 28 decision would result in full commissions on sales up until the date of the next mod set, for example Sept 15 )

   2. With cause due to reasons such as; the Sales Agency selling any non Company products deemed to be competitive to any of the Company's product lines to the Accounts, misrepresentation of the company, fraud, breach of this agreement and egregious errors or omissions, or failure to perform the Sales Agency duties outlined in section 6. A termination for cause would result in the forfeiture of any commissions related to sales beyond the termination date.

9. SAMPLES. Company shall provide samples of the Products at a time and in the styles and quantities and sizes as Company may from time to time choose.

10. RELATIONSHIP OF PARTIES. The Sales Agency relationship to Company in the performance of this Agreement is that of an independent contractor.
The personnel performing services shall at all times be under the Salesperson's exclusive control and direction. The Sales Agency shall pay for all applicable social security, withholding and other employment taxes. The Sales Agency will bear all expenses incurred in its sales endeavors except those which the Company agrees to pay in writing.

11. INDEMNIFICATION. Company shall indemnify and hold the Sales Agency harmless from any claims, demands, lawsuits, reasonable attorney fees, costs and judgments arising from or in connection with the products manufactured by the Company or sold by the Sales Agency pursuant to this agreement. In connections thereto, the Company shall furnish the Sales Agency with a copy of its insurance coverage, presently in effect within thirty (30) days from the signing of this agreement indicating that the Sales Agency is included as a certificate holder and is covered under such policy and shall furnish the Sales Agency with copies of renewal endorsements naming the Sales Agency as a certificate holder of such policy on a yearly basis thereafter.

12. INSURANCE. Company shall name the Sales Agency as additional insured and furnish a certificate of insurance to Sales Agency.

13. NON-SOLICITATION OF EMPLOYEES:
During the period of this agreement and for a period of one (1) year thereafter, the Company and the Sales Agency agree that they will not solicit, hire or otherwise utilize the services of any employee or sales associate of the other or any former employee or former sales associate of the other who had been an employee or sales associate of the other within six (6) months of such solicitation, hire or other utilization. Both parties agree that the loss of such employee or sales associate would result in irreparable harm to the other and both parties grant the other the right to seek damages and injunction in a court of equity or other competent jurisdiction to enforce said rights.

14. RESTRICTIVE COVENANT: During the term of this agreement, the Sales Agency will not take up assignments with any other organization or company, or engage directly or indirectly, in any capacity whatsoever in any field of commerce, whose line of business, merchandise and/or products are in direct competition with products of the Company, unless agreed to in writing by the Company. The Company in this above instance has the option to terminate the agreement.

If The Company enters into a business where The Sales Agency is already actively engaged;
The Company has the option to solicit and hire another sales agency.
The Sales Agency has the right to refuse representation of this business on behalf of The Company.

V3

15. CONFIDENTIALITY: The parties shall each observe complete confidentiality with regards to any data, information, specifications, documentation and other materials (tangible or intangible and machine readable or human readable) which is designated by either such party as confidential, or which otherwise represents the propriety information of such party. The Salesperson acknowledges that confidential information includes, but is not limited to, vendor costing and pricing, factory source, promotional plans, marketing and trade strategies. Neither party shall disclose or otherwise permit access to such confidential information to any third party, except to the extent necessary in the performance of that person's duties, and shall assure that any such person receiving access to any such confidential information is advised of the confidential nature thereof and is prohibited from copying or revealing the confidential information to any third party. This section shall not apply, however, to information which:

(a) Is or becomes publicly available without fault of the receiving party,
(b) Was known to the receiving party prior to disclosure by the disclosing party,
(c) Is independently developed by the receiving party without use of confidential information,
(d) Is rightfully disclosed to the receiving party by a third party, or
(e) Is disclosed pursuant to order or other requirement of a court or other governmental authority.

The parties agree that monetary damages would not be a sufficient remedy for breach of this Section 15. Accordingly, the non-breaching party shall be entitled to apply to a court of equity to obtain injunctive relief enjoining the continuation of such breach. The foregoing shall not limit the non-breaching party's right to such other remedies to which it may be entitled.
The obligations of this section shall survive any termination or expiration of this agreement.

V3

## 16. MISCELLANEOUS.

(a) Sales Agency may not assign its interest under this Agreement without the prior written consent of Company.

(b) This Agreement sets forth the entire agreement and understanding of the parties concerning the subject matter hereof and supersedes all prior oral and/or written agreements between the parties hereto. No other agreement, statement or promise relating to the subject matter of this Agreement which is not contained herein shall be valid or binding.

(c) This Agreement may not be modified or amended except by written instrument executed by the parties hereto.

(d) Company will pay commissions on all orders submitted by the Sales Agency to, and accepted by. Company prior to the date of termination in accordance with paragraph 8 of this Agreement.

(e) This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

(f) In case any one or more of the provisions contained in this Agreement shall be for any reason held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof, and this Agreement shall be enforced to the maximum extent permitted under applicable law.

**EXECUTED BY THE PARTIES HERETO:**

**Company:**

**Signature**
Steven P. Brigham

**Printed Name**

**Title**
Chief Executive Officer

**Date**
12/31/2014

**The Sales Agency:**

**Signature**

Robert Grisoff Sr.

**Printed Name**

**Title** President

**Date** 12/31/14

V3

## SCHEDULE (1)

### Company inventory turn rates of Walmart skus for the Sales Agency

For each drop in the "Targeted Turn Rate" of Walmart sku's there is a quarter point drop in the earned commissions.

| | LEVEL ONE | |
|---|---|---|
| **Division** | Targeted Turn Rate | Current Comm. Rate |
| **TRAVEL** | 4.0 | 2.0% |
| **SPORT Group** | 4.0 | 2.25% |
| | **LEVEL TWO** | |
| | Actual Turn Rate | Actual Comm. Rate |
| **TRAVEL** | 3.0 | 1.75% |
| **SPORT Group** | 3.0 | 2.00% |
| | **LEVEL THREE** | |
| | Actual Turn Rate | Actual Comm. Rate |
| **TRAVEL** | 2.5 | 1.50% |
| **SPORT Group** | 2.5 | 1.75% |

Turn rate is measured on a trailing 12 month basis and is calculated by: COGS/Net Sales. The turn rate will be measured and reported quarterly.

Commissions will be adjusted on a quarterly basis, as applicable

# SCHEDULE (2)

## Summary commission rates on The Products for the Sales Agency

| Customer Name | Sport Group | Travel | Gifts & Games |
|---|---|---|---|
| Wal-Mart | 2.25% | 2.0% | 2.0% |
| Sam's Club | 2.25% | 2.0% | 2.0% |

## TRAVEL & SPORT Growth incentive commission for the Sales Agency

- Commissions paid up to LEVEL ONE target net revenues are at the established rate in Schedule (2)

- Achieve LEVEL ONE Revenue Targets
  - commission changes to 3.0% on net revenue $'s over Level One
- Achieve LEVEL TWO Revenue Targets
  - commission changes to 4.0% on net revenue $'s over Level Two

The Net Revenue growth targets outlined below are specific to 2015.
New growth Net Revenue growth targets will be developed for 2016.

| Division | LEVEL ONE 2015 Net Revenue Growth Targets | | Commission rate of 3% starting at Net Revenue $'s |
|---|---|---|---|
| TRAVEL | $7,500,000 | | $7,500,001 |
| SPORT Group | $13,000,000 | | $13,000,001 |

| | LEVEL TWO 2015 Net Revenue Growth Targets | Commission rate of 4% starting at Net Revenue $'s |
|---|---|---|
| TRAVEL | $8,000,000 | $8,000,001 |
| Sport Group | $14,000,000 | $14,000,001 |