IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ACTIVE MARKETING GROUP, INC.**                                          **PLAINTIFF**

**V.**                                              **CASE NO. 5:16-CV-5079**

**EB BRANDS HOLDINGS, INC., d/b/a
EB Sport Group, EB Brands, E&B HK
Limited, EB Giftware, Sports and
Leisure Tech, and Sportline**                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff Active Marketing Group, Inc.'s ("Active")

Partial Motion to Dismiss Defendant's Second Amended Counterclaim (Doc. 31) and

Memorandum of Law in Support (Doc. 32), and Defendant EB Brands Holdings, Inc.'s

("EB") Memorandum in Response (Doc. 33).   For the reasons given below, Active's

Motion is **GRANTED**.

## I. BACKGROUND

According to the Amended Complaint in this case, Active and EB have been doing

business with each other since 1989. (Doc. 20, ¶ 10). Specifically, Active has been acting

as a sales representative for EB, "placing EB's products for sale with retailers like

Walmart." *Id.*   The subject of this lawsuit is the most recent sales representative

agreement ("the Contract") between the parties, into which they entered on December

31, 2014. *Id.* at ¶ 11; *see also* Doc. 1-1 (the Contract). Active alleges that on April 1,

2016, EB breached the Contract by unilaterally terminating it without adequate notice or

good cause, attempting to restrict Active's ability to communicate with Walmart, and

withholding sales commissions that were owed to Active by EB under the Contract. *See*

1

Doc. 20, ¶¶ 28–41; *see also* Doc. 1-2 (the termination letter from EB to Active).  Active's Amended Complaint sets forth two counts premised on these allegations: breach of contract, and violation of Ark. Code Ann. § 4-70-301, *et seq.*  (Doc. 20, ¶¶ 42–55).  EB has answered Active's Amended Complaint, and asserted four counterclaims for accounting, replevin, declaratory judgment, and breach of contract.  (Doc. 28, ¶¶ 56–80).

Active has moved under Fed. R. Civ. P. 12(b)(6) for this Court to dismiss EB's fourth counterclaim for breach of contract,[1] on the grounds that EB has failed to plead sufficient facts to plausibly show that it is entitled to relief.  Naturally, EB disagrees.  Active's Motion and EB's opposition have been fully briefed, and the Motion is now ripe for decision.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a pleading must provide "a short and plain statement of the claim showing that [the claimant] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court must accept all of the Counterclaim's factual allegations as true, and construe the pleadings in the light most favorable to EB, drawing all reasonable inferences in EB's favor.  *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the Counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when

---

[1] Active has not moved to dismiss any of EB's other counterclaims.

the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

EB's Counterclaim for breach of contract is premised entirely on the following allegations:

> 77.   The Sales Representative Agreement is a valid and enforceable contract between the parties.
>
> 78.   Defendant has fully satisfied all of its obligations to Plaintiff under the Sales Representative Agreement.
>
> 79.   Plaintiff breached its obligations to Defendant under the Sales Representative agreement by, *inter alia*, failing to perform in accordance with Section 6 of the Sales Representative Agreement, and/or by selling and/or marketing competitive products to existing and targeted, prospective customers in violation of the Sales Representative Agreement.
>
> 80.   As a result of Plaintiff's breaches, Defendant has lost sales and otherwise been damaged in an amount to be determined at trial, but believed to exceed $4 million, plus applicable interest.

(Doc. 28, ¶¶ 77–80).  The Court has not been able to find any other factual allegations in support of EB's breach-of-contract claim anywhere in EB's pleadings.

Section 6 of the Contract states, in its entirety:

> 6. SALESPERSON'S DUTIES.  The Sales Agency agrees to:
>
> > (a) use its best effort to sell and promote the sale of the Products to the Accounts to develop a volume of business commensurate

3

with the potential for sales of the Products in the Territory and to abide by Company's policies as communicated;

(b) assist the Company in contacting and soliciting prospective purchasers of the Products [a]nd participate in meetings and presentations with the Accounts;

(c) devote time for the purpose of soliciting or promoting the sale of the Products;

(d) maintain a sales office and dedicated support team with close proximity to the Accounts;

(e) monitor and report on the activity of the Accounts and competitive products at the Accounts in an effort to identify growth opportunities[;]

(f) assist the Company in the forecasting and replenishment process to ensure:
  - targeted in-stock levels are achieved for the Accounts
  - targeted inventory turns are achieved for the Company in Schedule (1)[;]

(g) confer with Company sales management team before corresponding with buyer(s)[;]

(h) provide weekly performance reports to Walmart buyers and EB team[;]

(i) hire or assign a new sales manager, funded by the Sales Agency, to sell to and manage [t]he Accounts, in order to maximize available business opportunities.  This hire will be designated by the Sales Agency and will be an employee of the Sales Agency. They will report directly to the Sales Agency.

(Doc. 1-1, p. 2).

Section 14 of the Contract states, in its entirety:

14.  RESTRICTIVE COVENANT: During the term of this agreement, the Sales Agency will not take up assignments with any organization or company, or engage directly or indirectly, in any capacity whatsoever in any field of commerce, whose line of business, merchandise and/or products are in direct competition with products of the Company, unless agreed to in writing by the Company.  The Company in this above instance has the option to terminate the agreement.

4

> If the Company enters into a business where [t]he Sales Agency is already actively engaged[,] [t]he Company has the option to solicit and hire another sales agency. The Sales Agency has the right to refuse representation of this business on behalf of [t]he Company.

*Id.* at 4.

Active argues that EB's breach-of-contract claim should be dismissed because the Counterclaim "nakedly assert[s] that [Active] breached its obligations under Section 6 of the [Contract] without specifying which obligations [Active] breached or how it breached them." (Doc. 32, p. 5), and because "[n]owhere in Count 4 or the other allegations in support of its counterclaims does EB . . . describe any of [Active]'s allegedly improper competitive activity," *id.* at 6. Active further argues that although the Counterclaim asserts that EB has "lost sales and otherwise been damaged," it fails to allege any facts from which the Court could plausibly infer that any breach of the Contract by Active actually caused EB to suffer any damages. Since breach and damage-causation are both essential elements of a breach-of-contract claim for recovery of damages under New York law,[2] *Dee v. Rakower*, 112 A.D.3d 204, 208–09, 976 N.Y.S.2d 470, 474 (N.Y. App. Div. 2013), Active argues that either of these pleading deficiencies is sufficient to warrant dismissal for failure to state a claim. EB counters with a reminder to the Court that "it is not necessary for each element to be pleaded individually" in order to survive a Rule 12(b)(6) motion, *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (2d Cir. 2008), and contends that Active inappropriately "seeks a fact-pleading standard that would require EB . . . to provide detailed factual allegations, itemized damage calculations, and sworn

---

[2] The Contract contains a New York choice-of-law provision. *See* Doc. 1-1, p. 6.

testimony at the pleading stage," (Doc. 33, p. 9), which would be well beyond the notice-pleading requirements imposed by Rule 8.

The Court agrees with Active that EB has failed to state a claim for breach of contract. While the Court recognizes that it is not necessary for EB to have specifically pleaded each individual element of its contract claim, it is also true that, as noted above, EB must "plead[] *factual content* that allows the court to draw the reasonable inference that [Active] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). As currently pleaded, it is impossible for the Court to determine the "grounds upon which [EB's contract claim] rests." *Erickson*, 551 U.S. at 93.

How did Active violate Section 6 of the Contract? Did it fail to "maintain a sales office and dedicated support team with close proximity to the Accounts," or perhaps fail to "report on the activity of the Accounts"? (Doc. 1-1, p. 2). Did Active fail to hire a sales manager for EB's accounts? *See id.* Or did the breach consist entirely of some other objectionable act or omission? The Court is left only to guess in a complete factual vacuum at the answers to these questions.

And how did Active violate the Contract's restrictive covenant? The bare allegation that Active "[sold] and/or market[ed] competitive products to existing and targeted, prospective customers in violation of the Sales Representative Agreement," (Doc. 28, ¶ 79), amounts to nothing more than a paraphrase of Section 14 of the Contract and an assertion, devoid of any "further factual enhancement," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), that it was violated. What competitive products were sold or marketed, and to whom? When? And if EB does not know the answers to these questions, then what is the factual basis for its belief that the restrictive covenant was

violated?  Again, in the face of the Counterclaim's silence, the Court can only conjure blind guesses.

Because of these factual deficiencies, EB's Counterclaim fails to state a claim for breach of contract.  EB does not need to plead all, or even most, facts presently available to it that support its claim for breach of contract.  But it does need to plead *some* facts beyond the bald, unadorned assertion that particular sections of the Contract were breached in some unspecified manner.  This, it has failed to do.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Active Marketing Group, Inc.'s Partial Motion to Dismiss Defendant's Second Amended Counterclaim (Doc. 31) is **GRANTED**, and Defendant EB Brands Holdings, Inc.'s counterclaim for breach of contract is **DISMISSED WITHOUT PREJUDICE.**[3]

**IT IS SO ORDERED** on this ___21st___ day of July, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court rules that EB's Counterclaim contains insufficient factual elaboration to support a claim for breach of contract, the Court does not reach the separate issue briefed by the parties as to whether the Contract permits the remedy that EB seeks for such breach.