IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ACTIVE MARKETING GROUP, INC.                                    PLAINTIFF

V.                          CASE NO. 5:16-CV-5079

EB BRANDS HOLDINGS, INC., d/b/a
EB Sport Group, EB Brands, E&B HK
Limited, EB Giftware, Sports and
Leisure Tech, and Sportline                                     DEFENDANT

## OPINION AND ORDER

Currently before the Court are Plaintiff Active Marketing Group, Inc.'s ("Active") Partial Motion to Dismiss Defendant's Third Amended Counterclaim (Doc. 39) and Memorandum of Law in Support (Doc. 40), and Defendant EB Brands Holdings, Inc.'s ("EB") Response (Doc. 41) and Brief in Support (Doc. 42). For the reasons given below, Active's Motion is **DENIED**.

As recounted in a previous Order by this Court:

> According to the Amended Complaint in this case, Active and EB have been doing business with each other since 1989. Specifically, Active has been acting as a sales representative for EB, placing EB's products for sale with retailers like Walmart. The subject of this lawsuit is the most recent sales representative agreement ("the Contract") between the parties, into which they entered on December 31, 2014. Active alleges that on April 1, 2016, EB breached the Contract by unilaterally terminating it without adequate notice or good cause, attempting to restrict Active's ability to communicate with Walmart, and withholding sales commissions that were owed to Active by EB under the Contract. Active's Amended Complaint sets forth two counts premised on these allegations: breach of contract, and violation of Ark. Code Ann. § 4-70-301, *et seq.*

(Doc. 34, pp. 1–2) (internal quotation marks and citations removed).

1

EB answered and filed counterclaims on June 23 for accounting, replevin, declaratory judgment, and breach of contract. Active moved to dismiss EB's counterclaim for breach of contract under Fed. R. Civ. P. 12(b)(6). This Court granted that Motion, dismissing the claim without prejudice because "[a]s currently pleaded, it is impossible for the Court to determine the grounds upon which EB's contract claim rests." (Doc. 34) (internal quotation marks and alterations omitted). The Court explained that while it appeared EB was alleging that Active breached Section 6 of the Contract, the Court was unable to glean from the pleadings which subsection Active was alleged to have violated, or what conduct or failure on Active's part could have constituted such a breach:

> How did Active violate Section 6 of the Contract? Did it fail to "maintain a sales office and dedicated support team with close proximity to the Accounts," or perhaps fail to "report on the activity of the Accounts"? (Doc. 1-1, p. 2). Did Active fail to hire a sales manager for EB's accounts? *See id.* Or did the breach consist entirely of some other objectionable act or omission? The Court is left only to guess . . . .

(Doc. 34, p. 6). In other words, the Court did not believe EB's counterclaim for breach of contract provided Active with the minimal notice required by Rule 8 of the Federal Rules of Civil Procedure.

On August 19, EB amended its pleadings, this time asserting factual allegations in support of its counterclaim for breach of contract with greater specificity. (Doc. 38). Active again moved on September 6 to dismiss EB's re-pleaded contract counterclaim under Rule 12(b)(6) for failure to state a claim, (Doc. 39), and requested this Court to set a hearing for oral argument on its Motion. The Court held the requested hearing by telephone conference earlier today and ruled from the bench. The purpose of this Opinion and Order is to memorialize the Court's ruling in greater detail.

The Court has already explained, in its previous Order, the legal standard applicable to Rule 12(b)(6) motions to dismiss:

> To survive a Rule 12(b)(6) motion to dismiss, a pleading must provide "a short and plain statement of the claim showing that [the claimant] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the Counterclaim's factual allegations as true, and construe the pleadings in the light most favorable to EB, drawing all reasonable inferences in EB's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).
>
> However, the Counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 500 U.S. at 570). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusion' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

(Doc. 34, pp. 2–3).

Although the prior version of EB's counterclaim which the Court dismissed merely made a vague assertion that "Plaintiff breached its obligations to Defendant under the Sales Representative Agreement by, *inter alia*, failing to perform in accordance with Section 6 of the Sales Representative Agreement," (Doc. 28, ¶ 79), this time EB has pleaded with much greater specificity, such that a reader of the counterclaim may reasonably infer from the face of the pleading how the breach allegedly occurred. The latest version of the counterclaim explicitly alleges that:

> Plaintiff materially breached the terms of the Sales Representative Agreement by, *inter alia*, failing to hire or assign a new sales manager to

3

maximize business opportunities with the Accounts in violation of paragraph 6(i) of the Sales Representative Agreement. Effectively, Plaintiff brought in less experienced personnel to replace, rather than supplement, RJ and the services he previously provided, thereby reducing the overall level and quality of service on Defendant's Accounts. Further, Plaintiff failed to use its best efforts to sell and promote Defendant's products to Walmart, Walmart.com, SAM's Club, and/or Samsclub.com, in violation of paragraph 6(a). . . . Furthermore, Plaintiff failed to maintain a dedicated support team with close proximity to the Accounts.

(Doc. 38, ¶¶ 84–85).

Thus stated, and unlike before, it is now perfectly clear what the factual bases and theories of recovery for EB's breach-of-contract counterclaim are, such that Active may easily be seen to have "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Active nevertheless argues that the counterclaim should be dismissed with prejudice, but none of its arguments are availing under the applicable legal standard.

Active first argues that EB is improperly attempting to read a nonexistent "Key Man" provision into the Contract, under which a specifically-named individual would be required "to devote a stated amount of time and effort to achieving contractual ends." *See* Doc. 40, p. 6. But that is not how the Court interprets EB's latest pleadings, and at any rate, EB explicitly disavows any such theory in its Response Brief to EB's Motion. *See* Doc. 42, pp. 6–7.

Next, Active argues that EB has not pleaded sufficient facts to support its contention that Active failed to use "best efforts" as required under paragraph 6(a) of the Contract. *See* Doc. 40, pp. 8–10. But as EB correctly points out in its Response Brief, the latest version of the counterclaim provides specific examples of alleged failures to use

4

"best efforts"; under New York law[1], a "best efforts" provision requires a party to "pursue all reasonable methods" to carry out its contractual obligation, "and whether such obligation has been fulfilled will almost invariably . . . involve a question of fact." *Kroboth v. Brent*, 215 A.D.2d 813, 814 (N.Y. Sup. Ct., App. Div., 3d Dept. 1995) (reversing an award of summary judgment as to a "best efforts" contractual provision). The Court will not peek behind the pleadings and make such factual findings prior to the filing of any motion for summary judgment.

Active also argues that EB has alleged insufficient facts to set out a breach of paragraph 6(d) of the Contract, which requires that Active "maintain a sales office and dedicated support team with close proximity to the Accounts." (Doc. 1-1, p. 2). This argument is misdirected. Active insists that EB "well knows" that "discovery will reveal evidence that [Active] did, in fact maintain a sales office and dedicated support team in close proximity to the Accounts." (Doc. 40, p. 11). If discovery reveals such evidence, then Active will be perfectly free to move for summary judgment on those grounds. But this is not a summary judgment motion; it is a Rule 12(b) motion, under which the Court must confine itself to the allegations set forth in the pleadings, construed in the light most favorable to EB. EB has alleged that Active "did not maintain a dedicated support team with close proximity to the Accounts," and "instead relied on sales representatives who often had to travel long distances, some from out of state, to reach the Accounts." (Doc. 38, ¶ 58). Again, this is adequate to provide Active "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

---

[1] The Contract's choice-of-law provision invokes New York law.

Finally, Active argues that EB has failed to allege "a plausible causal connection between the essential elements of breach and damages," and that the quantity of EB's alleged damages—"believed to exceed $4 million" in "lost sales and attendant lost profits" (Doc. 38, ¶¶ 60, 86)—has "strangely, remained unchanged" from estimates in earlier pleadings, despite EB having subsequently abandoned one particular theory of contractual breach. See Doc. 40, pp. 12–13. The Court disagrees, and sees nothing obviously strange about the stability in EB's damages estimates from one version of its pleadings to another. Certainly, changes in theories of recovery *may* result in changes to damages calculations, but that does not mean they *must*. It seems perfectly plausible to the Court that the facts pleaded by EB, accepted as true for purposes of this Motion, would result in "lost sales and attendant lost profits." The Court is not going to require EB to justify its measure of estimated damages with exacting precision at the pleading stage, "so long as facts are alleged from which damages may properly be inferred," which is what has been done here. See *A.S. Rampell, Inc. v. Hyster Co.*, 144 N.E.2d 371, 383 (N.Y. 1957).

**IT IS THEREFORE ORDERED** that Plaintiff Active Marketing Group, Inc.'s Partial Motion to Dismiss Defendant's Third Amended Counterclaim (Doc. 39) is **DENIED**.

**IT IS SO ORDERED** on this  17th  day of October, 2016.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE