IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ACTIVE MARKETING GROUP, INC.**                                    **PLAINTIFF**

**V.**                              **CASE NO. 5:16-CV-5079**

**EB BRANDS HOLDINGS, INC., d/b/a
EB Sport Group, EB Brands, E&B HK
Limited, EB Giftware, Sports and
Leisure Tech, and Sportline**                                       **DEFENDANT**

## OPINION AND ORDER

Currently before the Court are:

- Plaintiff Active Marketing Group, Inc.'s ("Active") Motion for Reconsideration (Doc. 96), Memorandum of Law in Support (Doc. 97), and Declaration of Eric A. Bartsch in Support (Doc. 98); Defendant EB Brands Holdings, Inc.'s ("EB") Memorandum of Law in Opposition (Doc. 102), Declaration of David J. Edwards, Esq. and supporting documents (Docs. 103, 104), Declaration of Scott D. Piper, Esq. and supporting documents (Docs. 105, 106), and Declaration of Lee Woodard, Esq. (Doc. 107); and Active's Reply Memorandum of Law (Doc. 117) and Declaration of Eric A. Bartsch in Further Support (Doc. 118);

- EB's Motion to Withdraw Its Answer (Doc. 125), and Declaration of Daniel F. Dooley, Temporary Receiver, in Support (Doc. 126);

- Proposed Intervenor-Defendant Daniel F. Dooley's Motion for Intervention (Doc. 109), Memorandum of Law in Support (Doc. 110), Declaration of Daniel F. Dooley in Support (Doc. 111), and Declaration of Pieter Van Tol in Support (Doc. 112); and Active's Memorandum of Law in Opposition (Doc. 121);

1

- Active's Motion for Summary Judgment (Doc. 67), Memorandum of Law in Support (Doc. 68), Declaration of Todd Grisoff in Support (Doc. 69), and Statement of Facts in Support and supporting documents (Docs. 70, 72); EB's Response and Memorandum of Law in Opposition (Doc. 78), and Responses to Statement of Undisputed Material Facts (Doc. 82); and Active's Reply Memorandum of Law in Support (Doc. 86);
- Active's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 75) and Affidavit of W. Teague Orgeman in Support (Doc. 76); EB's Response (Doc. 87); and the Response of David J. Edwards (Doc. 88); and
- Active's Motion for Leave to Withdraw as Co-Counsel (Doc. 85).

As explained below, Active's Motion for Reconsideration (Doc. 96) is **DENIED**; EB's Motion to Withdraw Its Answer (Doc. 125) is **GRANTED**; Mr. Dooley's Motion for Intervention (Doc. 109) is **DENIED**; Active's Motion for Summary Judgment (Doc. 67) is **GRANTED**; Active's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 75) is **GRANTED IN PART AND DENIED IN PART**; and Active's Motion for Leave to Withdraw as Co-Counsel (Doc. 85) is **GRANTED**.

## I. DISCUSSION

The preceding paragraph might lead a naïve reader to assume that this has become a rather complicated case. There is a sense in which he would be correct. But somewhat surprisingly, this case nevertheless has a rather simple resolution in the end.

First, to set the stage, it is useful to provide a brief history of how the parties got into this mess:

> As the Court has previously observed, this case arises out of a business dispute between the parties, who have been doing business with each other

2

since 1989. Specifically, Active has been acting as a sales representative for EB, placing EB's products for sale with retailers like Walmart. The subject of this lawsuit is the most recent sales representative agreement ("the Contract") between the parties, into which they entered on December 31, 2014. Active alleges that on April 1, 2016, EB breached the Contract by unilaterally terminating it without adequate notice or good cause, attempting to restrict Active's ability to communicate with Walmart, and withholding sales commissions that were owed to Active by EB under the Contract. EB has denied Active's allegations and asserted counterclaims of its own, alleging *inter alia* that Active breached the Contract by failing to use its best efforts to sell and promote [EB]'s products to Walmart, failing to maintain a dedicated support team with close proximity to the Accounts, bringing in less experienced personnel to replace, rather than supplement the chief salesperson for EB's accounts, etc.

(Doc. 77, pp. 1–2) (internal citations and quotation marks omitted).

The parties endured several disputes during the discovery phase of this case, which came to a head in March 2017, when EB's officers failed to appear for properly noticed depositions. After receiving briefing and oral argument on the matter, the Court was left with the impression that EB's counsel, David J. Edwards, had advised EB not to produce its officers for these depositions because EB had not been paying him the fees it owed him. Accordingly, the Court imposed sanctions on EB for this discovery abuse, prohibiting EB "from including, within its response to any motion for summary judgment that Active may file, any affidavits or other forms of testimony from EB or any representative of EB who failed to appear at a properly noticed deposition," ordering Active "to file a motion for attorney fees and costs and expenses, to be recovered jointly from EB and" Mr. Edwards, and ordering Mr. Edwards to show cause why the Court "should not take further disciplinary action against him." *See* Doc. 65, pp. 1–2. However, at the show-cause hearing, the Court learned that in fact Mr. Edwards had advised EB to comply with the deposition notices, and that EB had simply refused to do so. This revelation of willful misconduct on the part of EB prompted Active to file a Motion for

3

Reconsideration of the Court's earlier sanctions order. In this Motion, Active asks the Court, *inter alia*, to dismiss EB's counterclaims with prejudice, enter "default and final judgment in the sum of $946,359, in favor of [Active]," and "impos[e] a constructive trust on all proceeds collected from, or that may still be collected from, Wal-Mart by EB Brands or its receiver, including after-acquired property, to be held for the benefit of [Active] . . . ." *See* Doc. 96, ¶ 4.

Active employed that "or its receiver" language in its request because, as had also come to light around this time, EB was in far more severe financial distress than anyone outside of EB previously realized. And indeed, in early June 2017 a New York court appointed a receiver, Daniel F. Dooley, at the request of some of EB's secured lenders and with EB's consent. *See* Doc. 110, p. 4. A month after being appointed, Mr. Dooley moved to intervene in the instant case, contending *inter alia* that Active's request for a constructive trust was an improper attempt to cut in line ahead of EB's secured lenders who have valid and perfected security interests. *See* Doc. 109, pp. 1–2.

The Court will pause the narrative here to deal with this constructive trust issue. The parties disagree on whether this issue is controlled by New York law or Arkansas law, but this disagreement is an academic one because Active's argument fails under either regime. Active has asserted a claim against EB for breach of contract; and under well-settled law in both New York and Arkansas, a constructive trust is an equitable remedy, *see N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013); *Slaton v. Jones*, 88 Ark. App. 140, 150 (2004), meaning it ordinarily is not available for claims that are governed by a valid contract, *see Abraham v. Am. Home*

*Mortg. Serv., Inc.*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013); *Douglas v. Shelby Taylor Trucking, Inc.*, 2017 Ark. App. 156, at *8.

There are some exceptions to this general rule, all of which pertain to situations where the contract fails in some way or otherwise does not address the dispute at hand. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987); *Douglas*, 2017 Ark. App. 156, at *8–*9. Active argues that this is one of those situations, because EB "has held, and continues to hold, property which, notwithstanding the appointment of a receiver, is indisputably [Active]'s, and to which EB Brands has no legal or equitable claim." (Doc. 117, pp. 6–7. But the only reason Active offers for why this property "is indisputably Active's" is that *the Contract says it is*. Thus, Active's claim to the disputed property is governed by the Contract, and the equitable remedy of a constructive trust is not available to it.

As previously noted, though, a constructive trust is not the only sanction Active requested; the reader will recall that Active essentially asked this Court to award it a total victory in the form of striking EB's pleadings and granting Active default judgment for the full amount of damages claimed. EB initially opposed this request as well, but then on August 23, 2017 it reversed course, filing a Motion to Withdraw its pleadings in this case. In short, EB has concluded that it is hopelessly underwater, that it already owes far more money to its lenders than it can ever hope to repay, that a judgment against it in this case will make not one iota of practical difference to its already-defunct status, and that therefore it makes no sense to continue throwing away money on litigation expenses; it is better, EB reasons, to concede defeat and consent to a judgment in whatever amount will end this case than to continue throwing good money after bad. *See* Doc. 125, ¶¶ 16–

5

17. On that same day, counsel for Active informed the Court and EB via email that it has no objection to withdrawal of EB's pleadings and entry of judgment in favor of Active, so long as the Court also addresses the constructive trust issue (which has been done *supra*) and the matter of Active's fees, costs, and expenses associated with the deposition no-shows. (The latter issue of deposition-related fees, costs, and expenses was raised in a motion that Active filed on May 4, 2017, which remains pending now and will be addressed near the end of this Order, *infra*.)

The Court must engage in a bit of pedantry before ruling on EB's Motion to Withdraw. Although EB styles its Motion to Withdraw as having been brought under Fed. R. Civ. P. 41(a)(1)(A)(i) and (c), the Court believes Rule 41 is not the proper vehicle for this Motion. There are several reasons for this. First, Rule 41 does not appear to authorize dismissal of an answer; rather, it only contemplates dismissal of "an action" (by a plaintiff), *see* Rule 41(a)(1)(A), or of a "counterclaim, crossclaim, or third-party claim," *see* Rule 41(c). Second, even a counterclaim may only be dismissed under Rule 41(c) when no pleading has been filed in response to it; but here, Active filed a Reply to EB's Third Amended Counterclaims on October 31, 2016.[1] *See* Doc. 47.

---

[1] A week earlier, Active filed its Second Amended Complaint, *see* Doc. 46, and on November 14, 2016, EB filed its Answer thereto, *see* Doc. 48. But although EB refiled its Third Amended Counterclaims in the same document containing its Answer to Active's Second Amended Complaint, Active never subsequently refiled its Reply to EB's (second, identically re-pleaded) Third Amended Counterclaims. EB contends that because Active never refiled that Reply, there has been no responsive pleading to EB's Third Amended Counterclaims. The Court disagrees, because EB's November 14, 2016 Third Amended Counterclaims were identical to its August 19, 2016 Third Amended Counterclaims, *see* Doc. 38, which were the subject of Active's October 31, 2016 Reply. Frankly, it is not clear to the Court whether the Rules required Active to refile its Reply to an identical, unamended, and previously filed counterclaim in order to avoid default. A conservative reading of the Rules would indicate, at a minimum, that it would have been prudent for Active to do so, *see* Fed. R. Civ. P. 13(a)(1) (requiring a pleading to state any

6

Rule 15, on the other hand, ordinarily permits a party to "amend its pleading . . . with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). And as explained above, Active consented in writing through an August 23 email to the Court and counsel for EB to withdrawal of EB's pleadings (with certain conditions which are satisfied in this Order). However, the Case Management Order imposed a deadline of October 24, 2016 for amendment of pleadings, see Doc. 35, § 3, and deadlines set in a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012).

If EB were seeking leave to amend its pleadings in a more typical manner (say, by adding claims or parties), then this Court would have a very difficult time finding good cause, because "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). The Court does not see how it could find that EB has met that requirement of diligence, given that EB willfully failed to produce its officers for properly noticed depositions, as described *supra*. But given that

---

counterclaim "that—at the time of its service—the pleader has against an opposing party if the claim" relates to the opposing party's claims and does not destroy jurisdiction); Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim or crossclaim *within* 21 days *after* being served with the pleading that state the counterclaim or crossclaim."), and the Court has been unable to find any caselaw addressing this issue. But to whatever extent Active was required to answer EB's Third Amended Counterclaims a second time, the Court construes Active's October 31, 2016 Reply as satisfying that requirement in this case, because all parties and the Court have consistently treated that Reply as the operative pleading and because no default proceedings were ever initiated.

the untimely amendment of pleadings that EB is seeking here would operate entirely to Active's benefit and in favor of judicial economy, *see id.*, and given that even if EB had not belatedly moved to withdraw its pleadings the Court would be well within its discretion to strike EB's pleadings for willfully violating its discovery obligations, *see* Fed. R. Civ. P. 37(b)(2)(A)(iii), (d)(1)(A)(i), (d)(3); *Denton v. Mr. Swiss of Missouri, Inc.*, 546 F.2d 236, 240 (8th Cir. 1977) ("When a party's willfulness or bad faith is involved in failure to make discovery, the sanction of dismissal is proper."), the Court finds that good cause exists under these unique circumstances to grant EB's Motion to Withdraw.

Active has demanded damages in the amount of $946,359.00. *See* Doc. 68, p. 16; Doc. 96, ¶ 4(d). EB has indicated that it will consent to judgment in favor of Active in any amount that Active demands. *See* Doc. 125, ¶¶ 18–19. Accordingly, the Court finds it appropriate to enter judgment in favor of Active, against EB, for the full amount of requested damages, thereby granting Active's Motion for Summary Judgment.

However, there is the additional matter of Active's pending Motion for Attorney's Fees, Costs, and Expenses relating to the depositions for which EB's officers failed to appear. This requires a more nuanced analysis because, as noted *supra*, the Court has previously ordered that Active's deposition-related fees, costs, and expenses will be jointly recoverable from both EB and from Mr. Edwards; and although EB's Motion to Withdraw effectively constitutes an abandonment of its previous opposition to Active's fee motion, EB's Motion to Withdraw has not been joined by Mr. Edwards, who filed a separate opposition to the requested fees and costs. *See* Doc. 65, p. 2.

Active has requested deposition-related costs of $1,319.92, *see* Doc. 76, ¶ 6, and deposition-related attorney fees of $51,585.00, *see id.* at ¶ 4, for a total amount of

$52,904.92, see Doc. 75, p. 2. The attorney fees result from 141.1 billed hours of work by attorneys at the law firm of Stoel Rives LLP, apportioned as follows: 50.1 for an associate named Meredith A. Leake at the rate of $290 per hour, 82.3 for a partner named W. Teague Orgeman at the rate of $390 per hour, and 8.7 for a partner named Eric A. Bartsch at the rate of $570 per hour. See Doc. 76, ¶ 4; Doc. 76-1. The Court finds reasonable the number of hours Active billed for preparing to take the four depositions at issue here, given the complexity of the facts and the voluminous document production that preceded it, and given that the subjects of the depositions were to be senior officers of EB. See Doc. 62, p. 3. However, drawing on its "own experience and knowledge of prevailing market rates," *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005), in the low cost-of-living Fayetteville Division of the Western District of Arkansas, *Blum v. Stenson*, 465 U.S. 886, 898 (1984) (courts should look to the prevailing market rates "in the relevant community"), this Court concludes that hourly rates of $200, $275, and $300 are appropriate rates for Ms. Leake, Mr. Orgeman, and Mr. Bartsch, respectively. Multiplying these rates by the claimed number of hours for each attorney results in fees of $10,020.00 for Ms. Leake, $22,632.50 for Mr. Orgeman, and $2,610.00 for Mr. Bartsch, totaling $35,262.50. Adding costs of $1,319.92 to this amount yields $36,582.42, which is the amount of deposition-related fees, costs, and expenses the Court will award Active, to be jointly recoverable from both EB and from Mr. Edwards.

Ultimately, then, the Court will enter judgment in favor of Active against EB in the amount of $982,941.42, of which $36,582.42 will be a sanction that is jointly recoverable from EB and Mr. Edwards. Since Mr. Dooley has declared that he will withdraw his Motion for Intervention if EB's Motion for Withdrawal is granted, see Doc. 126, ¶ 13, the Court

will save him the trouble and simply deny his Motion for Intervention now. The Court has already declined to impose a constructive trust on the funds at issue in this case, and this award of judgment moots the remaining issues in Active's Motion for Reconsideration. There being no further issues before the Court, Active's Motion for Leave to Withdraw as Co-Counsel will be granted.

## II. CONCLUSION

**IT IS THEREFORE ORDERED** that:

- Active's Motion for Reconsideration (Doc. 96) is **DENIED**;
- EB's Motion to Withdraw Its Answer (Doc. 125) is **GRANTED**;
- Mr. Dooley's Motion for Intervention (Doc. 109) is **DENIED**;
- Active's Motion for Summary Judgment (Doc. 67) is **GRANTED**;
- Active's Motion for Attorneys' Fees, Costs, and Expenses (Doc. 75) is **GRANTED IN PART AND DENIED IN PART**; and
- Active's Motion for Leave to Withdraw as Co-Counsel (Doc. 85) is **GRANTED**.

Judgment will be entered contemporaneously with this Opinion and Order.

**IT IS SO ORDERED** on this 30th day of August, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE